UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| EUGENE CEASAR, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-11-88 |
| | § | |
| RYAN MARINE SERVCES, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OF FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

**I.**

This case was tried to the Court over a period of two days. The plaintiff, Eugene Ceasar, and the defendant, Ryan Marine Services, Inc., presented both testimonial and documentary evidence that is on file and/or recorded in the transcript of proceedings. After a review of the evidence, the Court determines that the plaintiff should prevail based on the findings of fact and conclusions of law hereinafter stated.

**II.**

This is an admiralty case brought under the Jones Act and general maritime law. On June 20, 2008, the plaintiff was a deckhand on the M/V RMS CYCLOPS owned and operated by the defendant. At the time, David Barnes was the captain of the vessel; Aldo Cavazos ("Aldo") served as engineer; and Raul Cavazos was a "second." At all times during the operations of the vessel, the plaintiff and his mates were acting in the course and scope of their various employments as seamen and supervisors, respectively. On the occasion, the Cyclops was returning from a job and proceeding to dock at the Talen Marine and Fuel Facilities dock in Freshwater City, Louisiana.

According to the plaintiff and Aldo, they were stationed at the rear of the vessel preparing to tie the vessel to the dock as Captain Barnes steered (backing) the vessel up to the dock. The plaintiff and Aldo informed Captain Barnes that the vessel needed to be pushed further back to close the gap between the rear of the vessel and the dock. In the meantime, the plaintiff and Aldo were attempting to pull the slack out of the lines in order to tie the vessel to the dock. The plaintiff contends that Captain Barnes refused to push back further and that he and Aldo were left to tie the vessel off as best they could.

The plaintiff went to his room on the vessel to shower and sleep while awaiting his next job. Before he could lie down, however, Aldo showed him a video recording that he had taken with his cell phone revealing that Captain Barnes had a firearm on board the vessel. The defendant was notified and the personnel manager directed the plaintiff and Aldo to leave the vessel. When the personnel manager arrived at the dock, he relieved Captain Barnes of his duties and permitted the plaintiff and Aldo to board the vessel.

The evidence shows that Aldo went ahead of the plaintiff and had actually boarded the vessel when the plaintiff called for help. When the plaintiff attempted to board the vessel, the vessel was at low tide, requiring the plaintiff to step down about two (2) feet to board. As the plaintiff traversed the tires on the dock, his feet slipped as the vessel moved, causing him to slip between the tires attached to the dock and those attached to the vessel. The plaintiff was able to grab the bar on the vessel to break his fall. However, in the process, he dislocated his left arm at the shoulder, resulting in an "anterior subcoracoid dislocation of the humeral head out of the glenoid fossa." The plaintiff was removed from the scene to a hospital by ambulance. Although the plaintiff's shoulder was put back in place, he continued to suffer pain and was prescribed physical therapy.

During the course of treatment for his shoulder, the plaintiff started to experience problems with his back. On August 7, 2008, his treating physician, Doctor Cox, directed him to Doctor Bonner, a neurosurgeon, because of continued complaints of back pain. Dr. Bonner commenced treating his back ailment at that time. During the course of three (3) years, the plaintiff underwent exploratory surgery in October of 2008 to his shoulder, lumbar arteriograms and steroid injections, a radiofrequency thermocagulation rhizotomy, a discogram and, finally, surgery to his back on March 21, 2011. The medical evidence supports the conclusion that the plaintiff's back injury occurred on the occasion that he suffered the shoulder separation.

The defendant presented no evidence that the plaintiff did not suffer the injuries reported on June 20, 2008. Instead, the defendant disputes that the injury occurred as reported and that the vessel was seaworthy on the occasion due to the fact that Captain Barnes' properly docked the CYCLOPS.

### III.

While the defendant complains that the plaintiff caused his own injuries while carrying bags and boarding the vessel, there is no evidence to support that claim. The Court is of the opinion that the plaintiff slipped as he was boarding the vessel as it moved away in some respect. The fact that the plaintiff was carrying large bags in anticipation of starting a new job merely points out the hazard associated with ingress and egress to and from a vessel by those employed on the vessel. In such circumstance, either the beginning or end of a job, it can be anticipated that seamen will move their personal possessions either on or off a vessel. Hence, a hazard exists that would not otherwise be present.

As well, the Court attributes credibility to the plaintiff's testimony concerning the failure of Captain Barnes to properly dock the vessel. This attribution is based on the assertion by

Captain Barnes that the fall was feigned, and the Court distrusts his state of mind concerning the plaintiff and Aldo after the report that he had a weapon on board the vessel.  He certainly had reason to testify against the plaintiff's case.  Moreover, his memory of that event was uncharacteristically better than his memory about another infraction that he later committed that cost him his job.  Therefore, the Court attributes no credibility to Captain Barnes' recollection of events on June 20, at a time when he was seriously in trouble himself.  Likewise, the testimony of the defendant's personnel manager, that the vessel was appropriately docked, overlooked the fact that the tide was out and that movement of a vessel in water, even when properly docked, is not uncommon.

The Court concludes and holds that the failure of Captain Barnes to back the CYCLOPS to the dock, after being warned, so that the rear of the vessel would have been closer to the dock, was negligence and created an unseaworthy condition for seamen, like the plaintiff, who needed to traverse the divide with their luggage and supplies.  Hence, the defendant failed to provide the plaintiff a reasonably safe place to work.

The Court also concludes that the plaintiff suffered injuries as a direct and proximate cause of Captain Barnes' conduct, entitling the plaintiff to damages for physical pain, mental anguish and suffering from that time until the time of trial and, on a lesser basis, through the end of his life expectancy.  Finally, the Court concludes and holds that the plaintiff was a seaman under the Jones Act and that the defendant was responsible for the negligent act(s) of Captain Barnes.

Therefore, based on the factual and medical evidence, the plaintiff shall recover as follows:  (a) past earning capacity loss, $60,933.00 (ability to earn $9.50 per hour); (b) future earning capacity loss, $206,932.00 (earning capacity rises proportionately from $9.50 per hour);

(c) pain and suffering in the past, $25,000.00 (d) pain and suffering in the future, $35,000.00; (e) future medical (medication), $1,500.00; for a total of $329,365.00.  An appropriate judgment will be entered.

    It is so ORDERED.

    SIGNED at Houston, Texas this 10th day of April, 2012.

                                              Kenneth M. Hoyt
                                              United States District Judge